UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH PAUL GUARNERI,

                              Plaintiff,                                      <u>DECISION AND ORDER</u>

                                                                                      05-CV-6483L

                  v.

SUPERINTENDENT CALVIN E. WEST,
Elmira Correctional Facility, et al.,

                              Defendants.
_____

**INTRODUCTION**

       Plaintiff Joseph Paul Guarneri ("plaintiff"), proceeding *pro se*, brings this action against Elmira Correctional Facility ("Elmira") employees; Sergeant Kattylacky, Nurse Administrator Hapkin, and Superintendent Calvin E. West (collectively "Elmira defendants"), as well as several Attica Correctional Facility ("Attica") employees; Superintendent James T. Conway, Deputy Superintendents M. Woeller and Randy James, Deputy Superintendent of Programs Sandra Dolce, Corrections Counselor L. Guertin, Grievance Supervisor George Struebel, Nurse Administrator B. Frisby, Physicians Dr. John Bauers and Dr. Laskawski, nurses Turton and Hawley, corrections officers D. Adamy, Rademacker, Preacher and two "John Doe" corrections officers (collectively "Attica defendants").

       Plaintiff alleges that the defendants subjected him to cruel and unusual punishment and denied him equal protection of the law, in violation of his rights pursuant to, inter alia, the Eighth and Fourteenth Amendments. (Dkt. #4).

       Plaintiff commenced the instant action on September 15, 2005. (Dkt. #1). He claims that during his one month's incarceration at Elmira, the Elmira defendants violated his constitutional

rights by failing to provide him with proper ventilation and heating, neglecting to timely repair a clogged toilet, failing to provide plaintiff with more than three opportunities to shower per week and/or failing to provide plaintiff with handicap-accessible showers to accommodate his knee brace, failing to provide adequate treatment for plaintiff's mental health, high blood pressure, hyperthyroidism and knee injury, and failing to provide him with sufficiently frequent access to the facility's law library. He alleges that after he was transferred to Attica, each of the Attica defendants denied him adequate mental health and medical care, subjected him to an unnecessarily rough pat search, denied him access to the law library on a number of occasions, and/or refused to let him out of his cell to attend certain religious services or observe several religious holidays. (Dkt. #4).

On January 29, 2010, the defendants moved for summary judgment dismissing plaintiff's claims, pursuant to Fed. R. Civ. Proc. 56 (Dkt. #87). On February 24, 2010, plaintiff filed papers opposing the motion. (Dkt. #100).

For the reasons set forth below, the defendants' motion (Dkt. #87) is granted, and the complaint is dismissed.

## DISCUSSION

**I.      Summary Judgment**

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Where the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999). However, "proceeding *pro se* does not otherwise relieve [an opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *5 (S.D.N.Y. 2003). Those

requirements include the obligation not to rest upon mere conclusory allegations or denials, but instead to set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).

## II.     Plaintiff's Claims

### A.     Claims Concerning Conditions at Elmira

Prison conditions which result in the "unnecessary and wanton" infliction of pain, and which are "totally without penological justification," are unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). However, in order to implicate the Constitution, a claim must be grounded upon "extreme deprivations," *Hudson v. McMillian*, 503 U.S 1, 9 (1992), which are "barbarous" or "shocking to the conscience." *Sostre v. McGinnis*, 442 F.2d 178, 191 (2d Cir. 1971), and not simply on conditions that are merely unpleasant or annoying to the inmate.

In determining whether prison conditions violate the Constitution, the Court first examines whether the deprivation is objectively "sufficiently serious" to form the basis for an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). "The Constitution . . . does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities" will be found sufficiently serious. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), *quoting Rhodes*, 452 U.S. 337 at 347-349. Second, the finder of fact must examine the subjective prong of the analysis, and determine whether the defendants were deliberately indifferent to the prisoner's needs, acting "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986).

Here, I find that plaintiff cannot demonstrate that the alleged deprivations were sufficiently serious to rise to the level of a constitutional violation. Plaintiff alleges that at various points during his brief, one-month, incarceration at Elmira, the Elmira defendants were indifferent to his needs in several respects.

Even accepting all of plaintiff's factual allegations as true, plaintiff has failed to demonstrate that he was subjected to an extreme deprivation. Although plaintiff claims that poor ventilation and uncomfortably warm air temperatures inside his cell at Elmira caused him to be bed-ridden with a cold and walking pneumonia, plaintiff -- despite seeing nurses at least three times per day to receive medication and mental health treatment -- never sought or received any treatment for respiratory problems, nor does he offer any evidence that poor ventilation was the cause of his distress. Indeed, it is undisputed that one wall of plaintiff's cell was comprised of bars, which permitted the free circulation of air from his cell to other areas, including the hallway and common areas outside plaintiff's cell, which he concedes were of an acceptable temperature. Overall, plaintiff presents no evidence of injury, and "[t]he Eighth Amendment does not guarantee a certain type of ventilation system or a certain rate of air exchange." *Bolton v. Goord*, 992 F. Supp. 604, 628 (S.D.N.Y. 1998).

Furthermore, to the extent plaintiff complained about the conditions of his incarceration, such as the clogged toilet, the defendants did not display "deliberate indifference," but responded quickly and appropriately. As soon as the faulty toilet was reported, facility workers twice attempted to repair it. After the second attempt failed, plaintiff was immediately moved to another cell. It is undisputed that throughout this time, plaintiff had access to other, functioning toilets elsewhere in the facility, and in fact plaintiff testified that he had not even attempted to use the cell toilet during his first three days in the cell. With respect to plaintiff's complaint about inaccessible showers, there is no evidence that plaintiff ever requested and was denied accessible showers, or that he otherwise complained or pursued a grievance about the issue. Minor disagreements about matters such as the frequency with which prisoners are permitted to take showers (three times per week) represent benign inconveniences of prison life which "are part of the penalty that criminal offenders pay for their offenses against society." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985) (*quoting Rhodes*, 452 U.S. 337 at 347).

Because plaintiff has neither alleged nor demonstrated a deprivation "sufficiently serious" to implicate the Eighth Amendment, his claims concerning the prison conditions are dismissed.

## B. Claims of Deliberate Indifference to Medical Needs

Plaintiff alleges that Nurse Administrator Hopkins and Superintendent West denied him adequate mental health and medical care while he was incarcerated at Elmira, and that Superintendent Conway, Grievance Supervisor Struebel, Corrections Officer Radmacher, Nurse Administrator Frisby, Dr. Bauers, Dr. Laskowski, Nurse Turton and Nurse Hawley denied him adequate mental health and medical care at Attica.

In order to establish an Eighth Amendment claim for the denial of adequate medical care, an inmate must allege and prove that prison officials exhibited deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A mere "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, the conduct at issue must be so egregious as to be "repugnant to the conscience of mankind." *Id.* at 102.

Similarly, an inmate's "disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.33d 698, 703 (2d Cir. 1998). *See also Reyes v. Ellen Gardener*, 93 Fed. Appx. 283, 285 (2d Cir. 2004).

Even granting Guarneri's allegations and evidence every favorable inference, his claims fall short of the standard for medical mistreatment. To the contrary, the undisputed facts establish that plaintiff was treated regularly, swiftly and appropriately for all of the medical conditions with which he was diagnosed. It is undisputed that while at Elmira, plaintiff received three visits every day by both medical and mental health nurses, who provided him with antidepressants, as well as

medications for high blood pressure, hyperthyroidism and pain relief. Plaintiff was also issued a knee brace to assist with the healing of a knee injury.

After his transfer, plaintiff spent fourteen months at Attica, during which his medical records reflect more than fifty contacts with medical staff, during which plaintiff continued to receive regular medications and treatment for high blood pressure, hyperthyroidism and pain. He was referred to outside medical experts for physical therapy, and examined by an orthopedic surgeon. Although plaintiff complains that the pain medications he was issued were insufficient to resolve his pain completely, there is no indication that more effective or appropriate treatment options existed, or that they were ever requested by plaintiff. In sum, there is no evidence from which a jury could conclude that the plaintiff's complaints of mental or physical distress were neglected or treated inappropriately, or that plaintiff otherwise had a serious medical need toward which the defendants acted with deliberate indifference. Thus, plaintiff's Eighth Amendment claim of medical mistreatment is dismissed.

**C.     Claims of Denial of Access to Courts**

Plaintiff claims that during his time at Elmira, he plaintiff was denied access to the law library for a month, and was not given adequate paper upon which to write grievances and letters.

After he was transferred to Attica, plaintiff claims that Superintendent Conway, Corrections Counselor Guertin, Deputy Superintendent Dolce, Grievance Supervisor Struebel, and Corrections Officers Rademacher and Adamy, denied some of his approximately fifty requests for access to the law library.

In order to state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that 'hindered [his] efforts to pursue a legal claim.'" *Davis v. Goord*, 2003 U.S. App. LEXIS 13030 at *7 (2d Cir. 2003), *quoting Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997). "Because law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure a reasonably

adequate opportunity [to access the courts], prisoners must demonstrate 'actual injury' in order to have standing." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001), *quoting Lewis v. Casey*, 518 U.S. 343 at 351 (1996).

Plaintiff does not contend that he was denied access to a law library entirely: rather, he claims that at both Elmira and Attica, he was not permitted to go to the law library as frequently as he wanted, and/or on some occasions was not issued a sufficient supply of writing paper, and that he was thereby harmed in his ability to contest his underlying criminal conviction, or to fully litigate other grievances and proceedings.

Plaintiff has failed, however, to produce any evidence of such harm. Defendants contend, and plaintiff does not appear to dispute, that plaintiff's underlying conviction resulted after plaintiff pled guilty and waived his right to appeal, in exchange for a lesser charge. Inculpatory statements made in connection with such a plea are entitled to a strong presumption of truth in further proceedings, such as habeas corpus petitions, *Fuller v. Schultz*, 572 F. Supp. 2d 425, 439-440 (S.D.N.Y. 2008), and Courts will not thereafter assume that the plaintiff could have obtained a more favorable result in such circumstances, "had the shelves of the jail law library been better stocked." *Id*. Plaintiff does not explain in what way his more than fifty documented visits to prison law libraries were insufficient to permit him to fully litigate his convictions and grievances, identify any papers he was unable to file for lack of paper, or specify any actual injury that resulted from a correctional facility's failure to provide him with unlimited access to its law library. To the contrary, plaintiff filed and pursued several grievances at Attica. While plaintiff vaguely alleges that he was "injured" when a Notice of Appeal he allegedly mailed to the New York State Appellate Division, Fourth Department from Attica was not received, there is no indication as to what harm resulted (for example, whether plaintiff was prevented from pursuing a timely appeal), and plaintiff makes no factual allegations that could form the basis for imputing liability for the alleged "mail tampering"

to any of the defendants. Accordingly, his claim that he was denied access to the courts must be dismissed.

**D.     Excessive Force**

Plaintiff's complaint names Superintendent Conway, Deputy Superintendents Woeller and James, Dr. Bauers, and Corrections Officers Preacher and Rademacher as defendants in a "brutal pat frisk" claim. Plaintiff alleges that on March 17, 2005, while he was incarcerated at Attica, a corrections officer performed an illegal pat search in which he assaulted plaintiff by forcing plaintiff's arm above his head and twisting his knee, injuring plaintiff's knee and shoulder.

Plaintiff thereafter filed a grievance about the incident against an "unnamed officer." He later referred to the officer as Pritchard, identified him in the instant Amended Complaint as "Preacher," and for the first time in his papers opposing the instant motion, filed February 24, 2010, as Officer Piechowicz (Dkt. #100). Although Attica's investigator ultimately determined in connection with plaintiff's grievance that it was Officer Heider who had frisked the plaintiff and that excessive force had not been used, plaintiff characterizes these findings as a subterfuge, designed to protect and obscure the true assailant.

It is undisputed that plaintiff's excessive force claim only implicates "Officer Preacher" in the alleged constitutional violation. It is also undisputed that plaintiff has not served an "Officer Preacher" (or any other officer whom he believes to be his assailant), has not sought to correct the complaint to substitute a different defendant, or attempted to demonstrate good cause for the failure to identify and/or serve this defendant. Fed. R. Civ. Proc. 4(m) ("[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant"). To the extent that plaintiff's February 24, 2010 filings could be construed as a request to re-name the pertinent officer as Officer Piechowicz instead of Preacher, amendment would be futile because the three-year statute of limitations for Section 1983 claims arising out of the 2005 incident has long expired, and there is no evidence that Officer Piechowicz timely received notice of the action, or "knew or should have known that the action would have been brought against

[him], but for a mistake concerning the proper party's identity." Fed. R. Civ. Proc. 15(c)(1)(C)(i), (ii). Plaintiff's excessive force claim is therefore dismissed.

## E. Claim of Denial of Religious Freedom, and Other Unexhausted Claims

Plaintiff alleges that Superintendent Conway and Grievance Supervisor Struebel denied him the ability to practice his religion while imprisoned at Attica, because they refused to allow him out of his cell to attend certain Easter, Christmas and New Years' celebrations, or to attend some Sunday masses and Bible study meetings.

The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner to exhaust all available administrative remedies before commencing litigation in federal court. 42 U.S.C. §1997e(a). The PLRA's exhaustion requirement pertains to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Presslar v. Tan*, 2003 U.S. Dist. LEXIS 2688 at *8 (W.D.N.Y. 2003).

The administrative remedies applicable to inmates generally follow three steps: first, the inmate must submit a timely grievance to an inmate grievance resolution committee or grievance coordinator for review. If the grievance is denied, the inmate may appeal that determination to the facility superintendent by filing an appeal with the Grievance Clerk. If the inmate is unsatisfied with the superintendent's decision, he may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In certain cases, the inmate may appeal directly to the CORC from the initial denial of his grievance, if the superintendent does not render a decision within a designated time frame. *See* 7 NYCRR §701.1 et seq. Each level of the grievance procedure must be exhausted before an inmate may commence litigation in federal court. *See Porter*, 534 U.S. 516 at 524; *Boomer v. DePerio*, 405 F. Supp. 2d 259, 262 (W.D.N.Y. 2005); *Colon v. Harvey*, 344 F. Supp. 2d 896, 897 (W.D.N.Y. 2004). "Because nonexhaustion is an affirmative defense, defendants bear the burden of proving that the plaintiff did not exhaust his administrative remedies and prisoner

plaintiffs need not plead exhaustion with particularity." *Ferguson v. Bizzario*, 2010 U.S. Dist. LEXIS 112132 at *12 (S.D.N.Y. 2010) (internal quotations omitted).

Initially, plaintiff concedes that he failed to exhaust his administrative remedies with respect to his freedom of religion claims. Although he filed three separate grievances concerning inability to attend religious services and similar issues, and unsuccessfully appealed them to the superintendent, he failed to take the final step of appealing them to CORC. Plaintiff's claims concerning impingement on his religious freedom are unexhausted, and are accordingly dismissed.

With the exception of his claims concerning the "excessive force" pat frisk and law library access, the rest of plaintiff's claims, discussed and dismissed above, are also subject to dismissal on the alternative grounds of non-exhaustion. Although plaintiff makes the generalized claim that he properly filed grievances with respect to all of his instant claims, there is no evidence that he ever pursued, filed or appealed any grievances at Elmira. With respect to his claims arising at Attica, plaintiff filed and fully appealed grievances only for his claims concerning the pat frisk, and inadequate access to the law library.

Plaintiff argues that to the extent he failed to exhaust any of his claims, that failure should be excused by "special circumstances." It is well settled that an inmate's technical failure to exhaust administrative remedies may be excused where "he did try to appropriately exhaust" those remedies, and "special circumstances" exist to justify his failure to fully comply with administrative procedural requirements. *See e.g.*, *Hairston v. LaMarche*, 2006 U.S. Dist. LEXIS 55436 at *31-*32 (S.D.N.Y. 2006). In determining whether special circumstances exist, the court must evaluate the "circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).

Here, plaintiff generally alleges that he failed to file additional grievances and/or appeals because of a retaliatory event that occurred against him on March 17, 2005 -- the alleged "excessive force" pat frisk by one of the defendants. (Dkt. #100 at section C (non-paginated)). However, plaintiff's claims that he was discouraged from filing grievances after March 17, 2005 ring hollow

in light of the undisputed record of his grievances, which establishes that plaintiff filed one grievance at Attica prior to the March 17, 2005 event, a second grievance concerning that event, and at least thirteen grievances about other issues thereafter, nine of which were fully pursued and appealed to CORC. (Dkt. #88, #93 Exh. A). I therefore find that plaintiff has not presented sufficient evidence to raise a material question of fact as to whether he was subjected to "circumstances which might understandably lead [him] to fail to grieve in the normally required way." *Giano*, 380 F.3d 670 at 678. His failure to exhaust his administrative remedies is not excused.

Because there is no material question of fact as to whether plaintiff properly exhausted his administrative remedies concerning his claims of inappropriate prison conditions, deliberate indifference to serious medical needs, and freedom of religion, and plaintiff has failed to offer any evidence upon which a reasonable jury could conclude that his failure to do so was justified by special circumstances, his unexhausted claims must be dismissed.

## CONCLUSION

For the foregoing reasons, I find that there are no material issues of fact, and that defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment dismissing the complaint (Dkt. #87) is granted, and the Complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
May 6, 2011.